UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) No. 23 CR 430 |
| | ) |
| TROY WHITMORE, | ) Judge Sara L. Ellis |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

In the minutes following the robbery of a PNC bank on July 31, 2023, Chicago Police Officers Melissa Nelson, Michael Brown, and Nicolas Corona (the "Officers") followed a GPS tracker attached to the stolen money to pursue and ultimately arrest Defendant Troy Whitmore. During his arrest, the Officers searched Whitmore's bag and found money, the tracker, and a note with instructions to "count out $10,000 put it in the envelope because I have a gun." The government charged Whitmore with one count of bank robbery by force or violence in violation of 18 U.S.C. § 2113(A). Whitmore now moves to suppress all the evidence obtained from the search.

**BACKGROUND**[1]

On July 31, 2023, the Officers received a call notifying them of a robbery at a PNC bank on Montrose Avenue and Broadway Street in Chicago, Illinois. They arrived at the PNC branch around 4:19 p.m., about two minutes after receiving the call. The Officers met with a PNC employee who informed them that a 6'2" Black man, wearing a black hoodie, a face mask, and black glasses, had robbed the bank. The employee also told the Officers that he did not know where the man went, but that the stolen money held a GPS tracker.

---

[1] The Court takes the facts in this background section from the parties' briefs and supporting exhibits. The parties agreed that there were no material factual disputes and they did not need an evidentiary hearing.

The Officers left the bank and returned to their car to pursue the route provided by the tracker. An FBI Task Force Officer ("TFO") updated the Officers with the tracker's location over the radio, noting that the tracker had a six-second delay. Following instructions provided by the TFO, the Officers made a U-turn on Montrose and then a right turn on North Broadway. While driving southeast down Broadway, the TFO reported over the radio that the tracker was moving southbound on Hazel Street south of Junior Terrace, with the movement suggesting that the target was on foot. At this point, body camera footage shows Nelson asking, "About 5, what did he say?" to which Corona responded, "5'8." Doc. 34 at 3. The Officers drove two blocks south on Broadway, turned left on Buena Avenue, and turned left again on Hazel Street driving north toward Junior Terrace. At 4:21 p.m., the Officers spotted a six-foot Black man, later identified as Whitmore, wearing a gray shirt and glasses, and carrying a bag walking southbound on Hazel. The Officers did not stop him, although Nelson noted that at the time she saw Whitmore on Hazel Street walking toward Junior Terrace, Whitmore was the only person they had seen who matched the robber's description.

Continuing on, however, the Officers turned right on Junior Terrace, where Brown saw at least one other person who did not match the description of the robber provided by the PNC Bank employee. The Officers made another right on Clarendon Avenue, driving southbound toward Buena Avenue. While driving on Clarendon Avenue, the Officers heard over the radio that the tracker was still on Hazel Street and slowly approaching Buena Avenue. The Officers made a right turn on Buena Avenue to travel westbound back to the intersection of Hazel Street and Buena Avenue. At that intersection, the Officers stopped their car and saw two Black men, including Whitmore. Whitmore crossed Buena Avenue from the north side to the south side of

the street, and then he walked westbound on Buena Avenue. The other man did not leave the north side of Buena Avenue at the intersection of Hazel Street and Buena Avenue.

The Officers then heard over the radio that the tracker was traveling westbound on Buena Avenue. The Officers followed the instructions, moving westbound on Buena Avenue. As the Officers approached the intersection of Buena Avenue and Broadway Street, Corona spotted Whitmore. Nelson determined Whitmore was the same person that she had initially seen on Hazel Street. She saw that he was sweating and began walking faster as he caught a glimpse of the Officers' car. The Officers saw another Black man standing in the parking lot of the 7-Eleven at the intersection of Buena Avenue and Broadway Street but did not initially approach him because they had not seen him walking down Buena Avenue when the tracker indicated it moved westbound down Buena Avenue.

At 4:24 p.m., approximately five minutes after leaving PNC bank, the Officers exited their car. Brown immediately placed Whitmore in handcuffs, while Nelson took the bag and searched it. In the bag, Nelson found a stack of money, the tracker, and a note that stated, "count out $10,000 put it in the envelope I have a gun." Doc. 36-1 at 4. Nelson searched Whitmore's front left pants pocket but did not find anything. While the Officers detained Whitmore, at least five additional police officers arrived on the scene.

## ANALYSIS

### I. Probable Cause for Arrest

"A warrantless arrest is valid under the Fourth Amendment only if it is supported by probable cause." *United States v. Alexander*, 78 F.4th 346, 348 (7th Cir. 2023). "Probable cause exists, in turn, when an objectively reasonable officer—with the same information known by the arresting officer—would believe there is a probability or substantial chance of criminal activity."

*Id.* "Whether probable cause exists is a commonsense, practical question made considering the totality of the circumstances." *United States v. Hill,* 818 F.3d 289, 294 (7th Cir. 2016).

Here, the totality of the circumstances reveals that the Officers had probable cause to arrest Whitmore. First, in the minutes after responding to a call about a robbery at the PNC Bank, the Officers followed signals provided by the tracker attached to the stolen money. *See Day v. Jolly*, No. 2:21-CV-120, 2021 WL 2686415, at *2 (N.D. Ind. June 30, 2021) (probable cause existed for an arrest based on the identification of a vehicle that matched the description of the car used by the suspects in a robbery found at the location where the GPS attached to the stolen money became stationary); *United States v. Mitchell*, No. 15-CR-47, 2015 WL 5513075, at *3 (E.D. Wis. Sept. 17, 2015) ("Officer Albert acquired probable cause to arrest defendant based on the reliable GPS data broadcast by Officer Heidamann after the bank robbery alert."), *aff'd,* 657 F. App'x 605 (7th Cir. 2016). The Officers saw Whitmore three times along the tracker's route. At the first point where the Officers saw Whitmore, Nelson did not see anyone else matching the robber's description. While the Officers saw other people standing at points on the route indicated by the tracker, they ruled those individuals out because they remained stationary while the tracker indicated that its possessor continued walking. Only Whitmore appeared to follow the tracker's route as the Officers followed its signal. And, despite Whitmore's arguments to the contrary, the six-second delay for the tracker would likely not undermine its reliability because a reasonable officer could conclude that someone on foot would be in a very similar location six seconds later. *See United States v. Paetsch*, 900 F. Supp. 2d 1202, 1218 (D. Colo. 2012), *aff'd,* 782 F.3d 1162 (10th Cir. 2015) (finding probable cause for arrest existed because the officers "had already gotten a 'very strong' positive signal that the

4

GPS tracking device was located in Defendant's SUV," even as it recognized that the GPS tracker would "ping" off the satellite every 6 to 10 seconds).

Additionally, Whitmore, a six-foot Black man with glasses carrying a bag, matched the description provided by the PNC Bank employee. While Whitmore did not wear the black hoodie or the mask the employee stated that the robber wore, a suspect's change in clothes does not undermine a finding of probable cause. *See United States v. Thomas*, 79 F. App'x 908, 913 (7th Cir. 2003) (probable cause for arrest existed because the defendant "fit the physical description of the bank robbery suspect in that he was a middle-aged black male approximately 6 feet tall, weighed 160 pounds, with facial features bearing resemblance to the suspect's description" and the defendant was seen driving around the area of the robbery); *United States v. Tilmon*, 19 F.3d 1221, 1228 (7th Cir. 1994) (finding probable cause where the arrestee matched the description of a "young, black male of medium complexion and of medium build and height" despite the fact that he wore different clothes from those described by the robbery eyewitnesses). Because the Officers identified Whitmore multiple times along the same path as the tracker and he largely matched the description of the robber, the Court finds that the officers had probable cause to arrest Whitmore once they approached him on the sidewalk.[2] *See United States v. Golden*, 418 F. Supp. 3d 416, 425 (D. Minn. 2019) ("At the time that the officers arrested Golden, therefore, they had a description that matched him (except for an orange coat and sunglasses, which he was no longer wearing) . . . they knew that the GPS tracker (and therefore

---

[2] Whitmore also argues that the Officers did not have reasonable suspicion to stop him to conduct a *Terry* stop. Because the Officers had probable cause to arrest Whitmore, which requires more support than a finding of reasonable suspicion needed to validate a *Terry* stop, the Court need not evaluate whether the Officers conducted a valid *Terry* stop. *See United States v. Bullock*, 632 F.3d 1004, 1012 (7th Cir. 2011) ("Reasonable suspicion is a lower threshold than probable cause and does not deal with hard certainties, but with probabilities.").

the robber) was on the bus; and they had a photo that convinced them that Golden was the robber.").

## II. Search Incident to Arrest

Next, the Court considers whether the Officers conducted a valid search of Whitmore's bag.[3] "A search is generally considered unreasonable unless the government obtains a warrant issued upon probable cause." *United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000). Various exceptions to the warrant rule exist, however. *Id*. One such exception is a search incident to arrest. *See Hill*, 818 F.3d at 295. A search incident to arrest is valid if it does not extend beyond "the arrestee's person and the area within his immediate control." *Arizona v. Gant,* 556 U.S. 332, 339 (2009). The zone of "immediate control" includes "the area from within which [the suspect] might gain possession of a weapon or destructible evidence." *Id.* This zone extends to bags held by the defendant. *See Hill*, 818 F.3d at 295 (finding a search of a bag held by the defendant while he was detained was a permissible search incident to arrest).

Here, because the Officers had probable cause to arrest Whitmore, the subsequent search of his bag was permissible as a search incident to his arrest. *United States v. Paige*, 870 F.3d 693, 701 (7th Cir. 2017) ("Because Officer Sheets-Walker had probable cause to arrest for both offenses, her subsequent pat down of Mr. Paige was permissible incident to that arrest.") Whitmore carried the drawstring bag at the time of his arrest, so it fell within the zone of his immediate control. *United States v. Rutley*, 482 F. App'x 175, 177 (7th Cir. 2012) ("The search of Rutley's bag was valid as a search incident to arrest, because the Fourth Amendment permits officers to search, without a warrant, any container carried by an arrestee, including bags, purses,

---

[3] Whitmore challenges the search of his pocket in addition to the search of his bag. However, as Whitmore acknowledges, the Officers did not find any evidence in his pocket. In other words, even if the search of Whitmore's pocket violated the Fourth Amendment, there is nothing for the Court to suppress. Thus, the Court only addresses the search of Whitmore's bag.

6

wallets, and books."). Therefore, the Officers' search and subsequent recovery of the money, tracker, and note did not violate the Fourth Amendment. *See Hill*, 818 F.3d at 295.

## CONCLUSION

For the foregoing reasons, the Court denies Whitmore's motion to suppress [34].

Dated: May 1, 2024

SARA L. ELLIS
United States District Judge